**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

LANDMARK DRUG CORP.,

    Plaintiff,

v.

OPTUM RX,

    Defendant.

Civil Action No. 24-24 (MAS) (DEA)

**MEMORANDUM ORDER**

**SHIPP, District Judge**

  This matter comes before the Court upon Defendant Optum Rx's ("Optum") Motion to Dismiss (ECF No. 5), or in the alternative, to stay proceedings pending arbitration pursuant to Federal Rule of Civil Procedure[1] 12(b)(6) and 9 U.S.C. § 3.[2] Plaintiff Landmark Drug Corp. ("Plaintiff" or "Landmark") opposed the Motion.[3] (ECF No. 9.) The Court has carefully considered the parties' submissions and decides the motion without oral argument pursuant to Local Civil

---

[1] Unless otherwise noted, all references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

[2] Optum also filed an opposition to Plaintiff's Motion for Injunctive Relief (*see* ECF No. 6) and Plaintiff replied (ECF No. 9). Plaintiff did not file a Motion for Injunctive Relief on this Court's docket. Rather, Plaintiff filed a Motion in Support of an Order to Show Cause Seeking Temporary Restraints and Injunctive Relief in the Superior Court of New Jersey, Chancery Division ("State Court"), prior to removal. (*See* State Docket No. SOM-12071-23; *see also* Pl.'s Moving Br. 10-28, ECF No. 1-3.) The findings set forth herein shall effectively resolve the issues presented in Plaintiff's State Court motion.

[3] Optum has yet to file a reply brief. Having fully reviewed the substance of the parties' submissions, the Court need not have this matter fully briefed before ruling on the merits of the pending motion.

Rule 78.1. For the reasons stated herein, the Court denies Optum's Motion to Dismiss. The Court will, however, grant Optum's alternative request to stay this matter pending further clarification from the arbitrator on the arbitrability of Plaintiff's request for a preliminary injunction.

## I.   BACKGROUND

### A.   Factual Background

Landmark is a retail pharmacy located in North Plainfield, New Jersey. (Compl. ¶ 3, ECF No. 1-1.) Optum is a pharmacy benefit manager ("PBM") and provides pharmacy benefit services to in-network pharmacies such as Landmark, which includes handling network pharmacy claims, mail order pharmacy services, drug utilization review, and formulary management. (*Id.* ¶ 4.) Since 2009, Landmark has participated in Optum's network through a contract with Pharmacy First, a Pharmacy Service Administrative Organization ("PSAO") that contracts directly with Optum. (*Id.* ¶ 6.)

As all sides agree, pharmacies participating in Optum's network are governed and bound by the terms of Optum's Pharmacy Provider Manual ("PPM"). (*Id.* ¶ 5.) Plaintiff does not dispute that, as a network pharmacy, it is subject to the terms of the PPM, including the dispute resolution procedures contained in Section L, titled "Alternative Dispute Resolution and Arbitration." (*Id.*, Ex. A.) Section L details dispute resolution procedures and requirements. (*Id.*) Specifically, a "dispute" is defined as:

> any and all issues, disputes, and/or controversies between the parties, including, but not limited to all disputes relating in any way to the parties' relationship, the terms of the Provider Network Agreement . . . and the Pharmacy Provider's status in the Administrator's network. . . . For avoidance of doubt, all termination disputes are still subject to arbitration.

(*Id.*)

Section L also outlines a set of procedures to be followed where Optum and a contracting party are involved in a "dispute." (*Id.*) In relevant part, the parties agree to "engage in good faith discussions to try to resolve" any disputes, and if they are unable to resolve the dispute within thirty days, "either party may request in writing a meeting or telephone conference to resolve the dispute." (*Id.*) Where the parties are still unable to resolve the dispute, either party may commence arbitration. (*Id.*) The PPM contains broad language in favor of arbitration, providing that arbitrators appointed by the American Arbitration Association ("AAA"):

> shall decide any and all questions regarding arbitrability or the formation, scope, validity, and/or interpretation of the parties' agreement to arbitrate. For further avoidance of doubt, all [d]isputes including [d]isputes regarding termination hereof or nonrenewal hereof . . . are subject to the arbitration process described herein.

(*Id.*) Parties subject to the PPM further acknowledge that neither party has "the right to litigate a [d]ispute in court, and that neither will have a right to a trial by a judge or jury, and the right to discovery is limited. *The parties each waive all such rights by agreeing that all disputes must be resolved exclusively in arbitration.*" (*Id.* (emphasis in original).)

The dispute at issue arose between Plaintiff and Optum in February 2023. (*Id.*, Ex. B.) On February 10, 2023, Optum sent correspondence to Plaintiff stating that Plaintiff was subject to a routine audit under the terms of the PPM. (*Id.*) That audit revealed: (1) one instance where Landmark "submitted claims for a different strength than what is indicated on the corresponding prescription records"; (2) an inventory shortage; and (3) three instances of an "incorrect DAW code" submission. (*Id.*) Optum provided its own evidence that Landmark made overpayments in the amount of $47,178.04. (*Id.*)

In subsequent correspondence on March 11, 2023, Plaintiff contested Optum's findings and asserted that the evidence "did not support [Optum's] findings" as to the claims submitted by

3

Landmark. (*Id.*, Ex. C.) Optum rejected Plaintiff's opposition and notified Plaintiff that it would be terminated from its network as of October 6, 2023. (*Id.* ¶¶ 15, 16.)

Plaintiff appealed Optum's determinations and internal hearings were held on October 4 and November 29, 2023, respectively. (*Id.* ¶¶ 17, 28, 31.) Optum upheld its decision and issued a final determination that Landmark would be removed from its pharmacy network as of December 7, 2023. (*Id.* ¶¶ 32-34.) Notably, and despite these findings, it appears that Optum has allowed Landmark to continue servicing its customers by providing prescription medications through Optum. (ECF No. 1-3, at *43[4].)

### B. Procedural History

Based on the terms of the PPM, Plaintiff filed a demand for arbitration[5] with the AAA on December 4, 2023. (Compl. ¶ 36.) The same day, Plaintiff filed the instant Complaint and order to show cause in the Superior Court of New Jersey, Chancery Division ("State Court") to enjoin Optum from terminating Landmark from its network until the completion of the arbitration proceedings. (*See id.*) The Complaint outlines: (1) a request for temporary restraints to maintain the status quo and allowing Landmark's patients to obtain their prescriptions during the pendency of the arbitration process; (2) a request for permanent injunctive relief "compelling Optum to proceed with . . . arbitration consistent with the procedures" prescribed in the PPM; and (3) a request to enjoin Optum from terminating Landmark as a participating pharmacy until a determination is rendered in the arbitration proceeding. (*Id.*)

---

[4] Page numbers preceded by an asterisk refer to the page numbers atop the ECF header.

[5] Plaintiff indicates that the arbitration proceeding for this matter is ongoing and in its "early stages." (Pl.'s Reply Br. in Supp. of Preliminary Injunction, ECF No. 9.)

On December 5, 2023, the State Court set a briefing schedule and granted an initial temporary restraining order ("TRO") until the return date of Plaintiff's order to show cause, i.e., January 18, 2024, to "preserve the status quo" and continue to allow Plaintiff to provide services to its customers from Optum's pharmacy network.[6] (*See* Statement of Reasons, ECF No. 1-3.) Optum timely removed the case to this Court[7] and filed the instant Motion to Dismiss the Complaint, or in the alternative, to stay the case during arbitration. (*See* Notice of Removal, ECF No. 1.)

## II. LEGAL STANDARD

### A. Motion to Dismiss

A district court conducts a three-part analysis to determine whether a motion to dismiss should be granted under Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must be able to identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify and accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, the court will discard bare legal conclusions or factually unsupported accusations. *Iqbal*, 556 U.S. at 678 (citing *Twombly v. Bell Atl. Corp.*, 550 U.S. 544, 555 (2007)). Third, the court determines whether "the [well-pleaded] facts alleged in the complaint are sufficient to show

---

[6] Specifically, the State Court made preliminary determinations that: (1) the termination of Landmark's membership in Optum's network would result in irreparable harm to Landmark; (2) Plaintiff has shown a likelihood of success on the merits and a well-settled legal right to seek arbitration under the PPM; and (3) the balance of the equities weighs in favor of Landmark through loss of customers, disrupted operations, and potential termination of partnerships with physician providers. (*See* State Court Statement of Reasons 3-9.)

[7] Optum removed the case under 28 U.S.C. § 1441(b), predicated on diversity jurisdiction, 28 U.S.C. § 1332(a)(1). (*See* Notice of Removal ¶ 6.) Plaintiff does not otherwise contest this Court's jurisdiction.

that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 210-11 (quoting *Iqbal*, 556 U.S. at 679). If the claim is facially plausible and "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," a motion to dismiss will be denied. *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). If, however, the claim does not "allow[] the court to draw a reasonable inference that the defendant is liable for the misconduct alleged," a motion to dismiss will be granted. *Id.* On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### B. Federal Arbitration Act

The Federal Arbitration Act ("FAA") "is a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24-25. The "unmistakably clear congressional purpose" behind the FAA is "that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). Courts, therefore, cannot delve into the merits of an arbitrable dispute; their jurisdiction is limited to staying the civil action and compelling the parties to arbitrate. *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 136-37 (3d Cir. 1998). A district court does, however, hold "the authority to grant interim relief in an arbitrable dispute, provided the court properly exercises its discretion in issuing the relief" and so long as the "traditional prerequisites for such relief are satisfied." *Ortho Pharm. Corp. v. Amgen, Inc.*, 882 F.2d 806, 811, 812 (D.N.J. 1989).

## III. DISCUSSION

Optum brings its Motion to Dismiss primarily on the basis that the arbitrator assigned by the AAA must decide whether injunctive relief against Optum should be granted in this case. (Def.'s Moving Br. 9-11.) Optum notes that Landmark has already filed a demand for arbitration in this case and the parties are already engaged in arbitration. (*Id.* at 5.) As such, Optum avers that "Landmark can seek any injunctive relief to which it believes it is entitled in *that* forum." (*Id.* at 1 (emphasis added).) For the following reasons, the Court agrees, and will stay this case pending further clarification from the arbitrator.

### A. Optum's Motion to Dismiss

As a general rule, courts do not delve into the merits of an arbitrable dispute; rather, jurisdiction is limited to staying the civil action and compelling parties to arbitrate. *Olick*, 151 F.3d at 136-37. The majority of circuits, including the Third Circuit, have carved out a limited exception to this general principle: courts retain jurisdiction to consider the merits of a dispute solely for the purpose of determining whether temporary injunctive relief is necessary pending the arbitration of the dispute. *Ortho Pharmaceutical Corp. v. Amgen, Inc.*, 882 F.2d 806, 811 (3d Cir. 1989). The goal of the temporary injunctive relief is to preserve the status quo until the parties can arbitrate the merits of their dispute. *Ortho*, 882 F.2d at 811; *see also Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 47-49 (1st Cir. 1986) (citing cases).

Justice White, writing for the dissent of the Supreme Court's denial of certiorari review, addressed this issue and stated, "[t]he question presented by this case—whether the Arbitration Act bars a court from issuing a preliminary injunction in a case subject to arbitration—is one that has divided the state and federal courts." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. McCollum*, 469 U.S. 1127 (1985); *see also Thompson v. Nienaber*, 239 F. Supp. 2d 478, 485 (2002) (citing

7

favorably Justice White's reasoning in *Merrill Lynch*). This division is marked by two distinct schools of thought. *Thompson*, 239 F. Supp. 2d at 485. On one hand, injunctive relief may be "needed pending arbitration so that the parties can engage in meaningful arbitration; without it, one party may irreparably injure the interests of the other and turn the arbitration into a 'hollow formality.'" *Id.* (citing *Ortho*, 882 F.2d at 811). On the other hand, some courts find that injunctive relief should not be permitted because it is the parties who bargained away their right to have the court consider the merits of their dispute. *Id.*

The Third Circuit has weighed in that injunctive relief should be allowed in cases subject to arbitration because:

> this approach reinforces rather than detracts from the policy of the Arbitration Act . . . . We believe that the congressional desire to enforce arbitration agreements would frequently be frustrated if the courts were precluded from issuing preliminary injunctive relief to preserve the status quo pending arbitration and, *ipso facto,* the meaningfulness of the arbitration process.

*Ortho*, 882 F.2d at 812 (quoting *Teradyne*, 797 F.2d at 51).

This Court must remain mindful, however, that the Third Circuit has not simply opened the door to permit the court to hear all equitable disputes. To the contrary, the Third Circuit has "consistently admonished the courts 'to exercise the utmost restraint and to tread gingerly before intruding upon the arbitral process.'" *Olick*, 151 F.3d at 136 (quoting *Lewis v. Am. Fed'n of State, Cnty. and Mun. Emps.*, 407 F.2d 1185, 1191 (3d Cir. 1969)).

Against this backdrop, Optum moves to dismiss the Complaint on the basis that this Court lacks jurisdiction to decide whether to grant temporary restraints or a preliminary injunction. (Def.'s Moving Br. 9-11.) To support its argument, Optum primarily relies on an out-of-district decision from the District of Delaware, *Vertiv Corp. v. SVO Building One, LLC*, No. 18-1776, 2019 WL 1454953, at *5 (D. Del. Apr. 2, 2019), where, in similar circumstances as this case, the

Delaware District Court determined that it was "entirely without authority . . . to resolve [p]laintiff's request for a preliminary injunction" because "[t]hat issue is for the arbitrator." Yet, *Vertiv*, does not align with the Third Circuit's precedent in *Ortho, supra.* Indeed, courts have rebuked the decision in *Vertiv* for this very reason. *See, e.g., Gen. Mills, Inc. v. Champion Petfoods U.S., Inc.*, No. 20-181, 2020 WL 915824, at *6 (S.D.N.Y. Feb. 26, 2020) (noting that "[i]n the face of this apparent consensus within the Second Circuit, [d]efendants invoke only a summary decision from the District of Delaware [*i.e., Vertiv,*] . . . [and] *[t]his [c]ourt harbors doubt about whether the Vertiv decision is consistent with Third Circuit precedent.*" (emphasis added) (internal citation omitted) (citing *Ortho*, 882 F.2d at 812)). For the reasons stated, this Court has the authority to grant injunctive relief in an arbitrable dispute, so long as "the traditional prerequisites for such relief are satisfied." *Ortho*, 882 F.2d at 812. **Optum's** Motion to Dismiss on the basis that this Court lacks jurisdiction to grant injunctive relief pending the **parties'** arbitration is therefore denied.

    **B.    Optum's Motion to Stay Proceedings**

In the alternative, Optum contends that Plaintiff's motion for a preliminary injunction and temporary restraints would be most effectively resolved through arbitration, in accordance with the broad provisions of the PPM's arbitration and dispute resolution clause. (Def.'s Moving Br. 13.) The Court agrees.

There is no doubt that the parties have submitted the claims at issue in this case to arbitration and each side agrees arbitration is the appropriate mechanism to resolve this dispute. The PPM incorporates the AAA's commercial arbitration rules and conspicuously delegates the issue of arbitrability to the arbitrator. (Compl. Ex. A.) As detailed above, the PPM declares that:

> For avoidance of doubt, the arbitrator(s) shall decide any and all questions regarding arbitrability or the formation, scope, validity, and/or interpretation of the parties' agreement to arbitrate.

(*Id.*) The parties agreed that "*all disputes* must be resolved *exclusively* in arbitration." (*Id.* (emphasis added).) Based on the expansive scope of the parties' agreement and bearing in mind that the decision to grant or deny a preliminary injunction is largely within the Court's discretion, *see Teradyne*, 797 F.2d at 51, the Court finds that the best approach here is to stay this case in its entirety pending clarification from the arbitrator on the arbitrability of a preliminary injunction.[8]

The Court further acknowledges that, in light of the State Court's order, the parties appear to have maintained the status quo, and Landmark has continued providing service to its clients through Optum's pharmacy network. (ECF No. 1-3, at *43.) Consequently, it appears that the parties have reasonably determined that the matter would be best served by preserving the existing state of affairs while awaiting the arbitrator's decision on Plaintiff's application for injunctive relief. In the event the circumstances have changed such that Plaintiff is unable to serve its clientele via Optum's network prior to the arbitrator's decision, the parties are directed to promptly notify the Court.

In summary, the Court will stay this case and compel the parties to arbitrate Landmark's request for injunctive relief. Plaintiff's request to compel arbitration is denied as moot given that the parties are already engaged in arbitration.

---

[8] This Memorandum Order is not to be construed as a ruling as to the merits of Plaintiff's application for a preliminary injunction. Indeed, the Court acknowledges Optum's argument that there appear to be substantial hurdles as to Plaintiff's requests for relief insofar that the losses presented are largely monetary. (*See* Def.'s Opp'n to Pl.'s Motion for a Preliminary Injunction 16-18, ECF No. 6.)

IV.  **ORDER**

    **IT IS THEREFORE,** on this <u>8th</u> day of February, 2024, **ORDERED** as follows:

1. Optum's Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) and 9 U.S.C. § 3 (ECF No. 5) is **DENIED**.

2. Plaintiff's request to compel Optum to participate in an arbitration proceeding is **DENIED AS MOOT** given that the parties are already engaged in arbitration.

3. The case is **STAYED** pending further clarification from the arbitrator concerning Plaintiff's application for preliminary and/or permanent injunctive relief.

4. The parties must advise the Court in the event of a decision by the arbitrator as to Plaintiff's request for injunctive relief in that forum.

5. In the absence of an interim resolution by the arbitrator, the parties are directed to e-file a status update within **two months** from the date of entry of this Memorandum Order.

 

                                                 /s/ Michael A. Shipp
                                                 **MICHAEL A. SHIPP**
                                                 **UNITED STATES DISTRICT JUDGE**